IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLEOTILDE D., <br><br> Claimant, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Respondent. | No. 18 C 7224 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Cleotilde D.[1] ("Claimant") seeks review of the final decision of Respondent Andrew Saul,[2] Commissioner of Social Security ("Commissioner"), denying Claimant's application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. *See* [ECF No. 7]. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant filed a Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 24]. The Commissioner filed a Response to Plaintiff's Motion for Summary Judgment [ECF No. 31], and Claimant filed a Reply [ECF No. 32]. This matter is fully briefed and ripe for review. For the reasons discussed below, Claimant's request that the Court reverse the Commissioner's decision is granted, and this case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her first name and the first initial of the last name.

[2] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), the Court has substituted Commissioner Saul as the named defendant.

1

## PROCEDURAL HISTORY BEFORE THE COMMISSION

On October 14, 2015, Claimant filed an application for Supplemental Security Income benefits pursuant to Title XVI of the Social Security Act based on a mental health disability, including paranoia, delusions, and depression. (R. 73, 86, 215, 235). Her application was denied initially on December 1, 2015 (R. 67-71, 87), and upon reconsideration on March 8, 2016 (R. 95-98), after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R. 101-104). On August 21, 2017, Claimant appeared and testified at a hearing before ALJ William J. Mackowiak. (R. 41-54). At the hearing, Claimant was represented by attorney Stephen Tousey. (R. 99, 100). During the hearing, the ALJ also heard testimony from vocational expert ("VE") Aimee Mowery. (R. 54-61).

On November 15, 2017, the ALJ issued his decision denying Claimant's application for Supplemental Security Income benefits. (R. 20-33). In finding Claimant not disabled within the meaning of the Act, the ALJ followed the five-step evaluation process required by Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since October 14, 2015, which is the date she filed for Supplemental Security Income benefits. (R. 22). At step two, the ALJ found that Claimant has severe impairments, including affective disorder and anxiety disorder, as defined by 20 C.F.R. § 416.920(c). (R. 22). The ALJ also acknowledged that Claimant has a recurrent history of headaches. (R. 22-23), but he found that "[t]here was nothing in the record that indicated the claimant had experienced more than minimal work-related limitations due to headaches" so he concluded that it was not a severe impairment. (R. 23).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (R. 23). The ALJ considered the severity of Claimant's mental impairments, individually and in combination, and determined that her impairments did not meet or medically equal the criteria of listings 12.03, 12.04, or 12.06. (R. 23). The ALJ also considered whether Claimant's mental impairments created any functional limitations to satisfy the "paragraph-B criteria." (R. 23). Ultimately, the ALJ made the paragraph-B findings that Claimant had only mild and moderate mental limitations. (R. 23-26). Specifically, the ALJ found Claimant had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace without any explanation. (R. 26).

The ALJ then found Claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that she has environmental limitations that require avoiding concentrated exposure to hazards, including heights and machinery.[3] (R. 27). The ALJ also found further limitations to work that require: no more than simple workplace changes; no more than simple workplace judgment; no more than simple work-related decisions; no more than occasional interaction with the public, coworkers, and supervisors; and no requirement of rapid production quotas. (R. 27). In reaching his decision, the ALJ gave some weight to the opinion of Claimant's treating psychiatrist Dr. Jacob Moskovic, but he gave the most weight to the opinions of the state agency consultants. (R. 30).

At step four, the ALJ found that Claimant had no past relevant work. (R. 31). The ALJ concluded at step five that Claimant could perform a significant number of jobs in the national

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008).

economy, such as hand packager, sorter, and laboratory equipment cleaner which were identified by the VE. (R. 31-32).

Based on all of these reasons, the ALJ found Claimant was not disabled under the Act. (R. 28). The Appeals Council declined to review the matter on August 30, 2018 (R. 1-8), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks

evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant argues that the ALJ committed multiple errors in his analysis, including: (1) failing to explain his findings on the paragraph-B criteria; (2) failing to properly evaluate Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms under Social Security Regulation 16-3p; (3) failing to address and account for Claimant's psychotic symptoms and her limitations in concentration, persistence, and pace in the RFC determination; (4) not properly considering the opinion of Claimant's treating psychiatrist; and (5) not applying the correct legal standards throughout the five-step process. The Court will address some of Claimant's arguments below as necessary to resolve her pending motion.

**I.    The ALJ's Findings On Claimant's Functional Limitations Are Deficient And Not Supported With Any Explanation**

Claimant argues that the ALJ's findings on the severity of her mental impairments and the resulting functional limitations for the paragraph-B criteria are conclusory and lack any explanation. The Court agrees with Claimant.

When a claimant alleges a disability due to a mental impairment, an ALJ is obligated to employ a special technique when evaluating the claim. *See* 20 C.F.R. § 416.920a(a); *see also Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008). The special technique has two steps. First, the ALJ

5

must consider whether the claimant has a medically determinable mental impairment. *See* 20 C.F.R. § 416.920a(b)(1). If so, the ALJ then proceeds to the second step and rates the degree of functional limitation(s) resulting from the mental impairment(s). *See* 20 C.F.R. § 416.920a(b)(2). At this step, the ALJ considers four components: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 416.920a(c)(3). In the first three areas, the degree of limitation is assessed using a five-point scale: none, mild, moderate, marked, and extreme. In the fourth area for episodes of decompensation, the degree of limitation is assessed using a four-point scale: none, one or two, three, and four or more. *See* 20 C.F.R. § 416.920a(c)(4). These functional areas are known as the "B criteria." *See Craft*, 539 F.3d at 674. The ALJ must incorporate these findings and conclusions in his decision. *See* 20 C.F.R. § 416.920a(e)(2).

In this case, at the first step of the special technique, the ALJ found that Claimant has two severe mental impairments, affective disorder and anxiety disorder, and that these medically determinable mental impairments significantly limit her ability to perform basic work activities. (R. 22). Next, the ALJ considered the degree of any functional limitations resulting from those impairments. In doing so, the ALJ recounted (in four pages of his opinion) Claimant's medical history, her five-year treatment record, and her statements to the agency. (R. 23-26). Then, without any explanation or reasoning to support his conclusions, the ALJ found that Claimant had mild limitations in understanding, remembering, or applying information and in adapting or managing oneself and moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace. (R. 26). Based on these findings, the ALJ concluded that the paragraph-B criteria were not satisfied.

When making findings on the paragraph-B criteria, however, an ALJ is required to build an accurate and logical bridge from the evidence to his conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Courts have held that "[a] list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the evidence and his conclusion that [the claimant] has no marked limitations." *Pimentel v. Astrue*, 2013 WL 93173, at *9 (N.D. Ill. Jan. 8, 2013); *see also Welch v. Colvin*, 2014 WL 1413538, at *6 (S.D. Ind. Apr. 11, 2014) ("The special technique requires a detailed explanation of rankings. . . ."); *Smith v. Astrue*, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011) (noting that "cataloguing" the evidence "is no substitute for analysis or explanation"). The ALJ did not provide any explanation for the rankings and, therefore, did build the required logical bridge to his conclusions in this case. After recounting a factual narrative of Claimant's medical history and treatment record, the ALJ simply made conclusory paragraph-B findings without any analysis or explanation as to how or why he made them. This is an error requiring remand.

To point out just a few deficiencies, the ALJ did not provide any explanation why he concluded Claimant is only mildly limited in understanding, remembering, or applying information when she had reported and documented memory problems, which her treating psychiatrist Dr. Moskovic attributed, in part, to her medication. (R. 391, 463). The ALJ also did not reconcile his finding that Claimant has a moderate limitation in concentration, persistence, and pace with evidence in the record that she has ongoing hallucinations. (R. 461-63). In addition, the ALJ found only moderate social limitations despite Claimant's hallucinations, paranoia about others, and noted mild agoraphobia (R. 381, 461-63). Lastly, the ALJ did not explain why Claimant's limitations in adapting or managing herself were only mild despite her reportedly

7

significant dependence on her family for support and being "very delusional" (R. 26) as of December 2016 with paranoia leading to even a fear of showering. (R. 391, 462).

Claimant's medical records and treatment history present evidence of varying degrees of functioning, but the ALJ does not explain why he credited certain limitations and not others. *See Negron v. Colvin*, 2017 WL 985642, at *8 (N.D. Ill. Mar. 14, 2017) ("The ALJ did not explain how he reached his conclusions, and thus, it is unclear how the ALJ actually derived his paragraph B findings. . . ."); *Ripley v. Colvin*, 2014 WL 2457702, at *10 (N.D. Ill. June 2, 2014) (explaining that ALJ was not entitled to move from evidence "to evaluate the Paragraph B criteria without explaining what evidence he relied on and how he reached his decision"). Finally, it is not clear how or why the ALJ concluded that Claimant's symptoms "were managed until at least December 2016" (R. 26) when there is some evidence in the record to the contrary. (R. 390-98; R. 461-78) (Dr. Moskovic's treatment notes and medication records showing that Claimant had a varying degree of functionality between 2012 when she began her treatment with Dr. Moskovic and 2016 when she became more delusional).[4]

The Commissioner asserts that Claimant's "argument is nothing more than a contention that she would have weighed the evidence differently." Commissioner's Resp. [ECF No. 31], at

---

[4] *See, e.g. and compare*, Treatment Note 3/15/12, at R. 470 ("She is still delusional"); Treatment Notes 10/15/12 and 12/17/12, at R. 468 ("She is doing better" and "She is doing well overall"); Treatment Note 2/28/13, at R. 467 ("She is feeling depressed"); Treatment Note 4/26/13, at R. 467 ("She had another episode of panic"); Treatment Note 9/24/13, at R. 466 ("She is afraid, she is anxious")' Treatment Note 11/7/13, at R. 466 ("Appears very flat, preoccupied, depressed. Afraid of 'monsters'"); Treatment Note 4/22/14, at R. 465 ("She is going out and she feels better after"); Treatment Note 7/15/14, at R. 465 ("She has been walking several times a week" and "She is expressing fear of taking a shower"); Treatment Note 9/29/14, at R. 465 ("She is doing better, [Husband] is spending more time at home since he is unemployed now. She is in a better mood"); Treatment Note 5/19/15, at R. 464 ("She is doing better, especially since her [husband] is home. Will be travelling to Washington State to see her family with her daughter who came back from school in Italy"); Treatment Note 10/31/15, at R. 464 ("She is unwilling to take a shower because she is afraid somebody. She has been going to church, but she is having some memory problems"); Treatment Note 1/19/16, at R. 463 ("She had some trouble with her medication….Auditory hallucinations reported"); Treatment Note 5/716, at R. 464 ("She hears a voice of Brambela"); Treatment Note 12/1/16, at R. 462 ("She is very delusional and hallucinations up").

3. The Court disagrees. The underlying premise of Claimant's argument is not that she wants this Court to re-weigh the evidence, or weigh the evidence differently, but more fundamentally that we do not know how the ALJ weighed the evidence, and therefore, the Court cannot determine whether the ALJ's conclusions are logical and reasonably supported by the evidence. There is no dispute that it is not the Court's task to reweigh the evidence or substitute its judgment for that of the ALJ, but that is not what Claimant is asking the Court to do. The Court simply does not know how the ALJ weighed the evidence, what parts of the record he relied upon, or how he evaluated Claimant's treatment history to make his paragraph-B findings. Because the Court cannot decipher how the ALJ reached his conclusions, it cannot determine whether they are supported by substantial evidence, and it will not speculate about that important issue.

The bare recitation of Claimant's medical history and treatment record is not enough to support the ALJ's paragraph-B findings without any explanation to support those conclusions. Accordingly, the ALJ's assessment of the evidence at this step is not supported by substantial evidence, and remand is required.

## II.     The RFC Does Not Account For All Of Claimant's Functional Limitations

Claimant also argues that the ALJ failed to account for her deficiencies in concentration, persistence, and pace in both the hypotheticals he posed to the VE and in his RFC assessment. The Court again agrees with Claimant.

It is well-settled law that all of a claimant's limitations must be incorporated into both the hypothetical(s) posed to the VE and the ALJ's RFC assessment. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Specifically, any hypothetical posed to a VE must account for all documented physical and mental limitations, including any limitations in "concentration, persistence or pace." *Ramirez v. Barnhart*, 372 F.3d

9

546, 554 (3rd Cir. 2004). "Though an RFC assessment need not recite the precise phrase 'concentration, persistence, or pace,' any alternative phrasing must clearly exclude those tasks that someone with the claimant's limitations could not perform." *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 739 (7th Cir. 2018)).

In this case, the ALJ specifically found that Claimant had moderate limitations in "concentrating, persisting, or maintaining pace." (R. 26). The ALJ, however, did not use the words concentration, persistence, or pace in any of the hypotheticals he posed to the VE but rather used "alternative phrasing" to seemingly attempt to eliminate tasks that someone with Claimant's limitations would not be able to perform. *Id.* The Court will assume for the sake of argument, given the phrasing in his decision, that the ALJ included in his RFC analysis the following restrictions to target Claimant's limitations in concentration, persistence, and pace: (1) "simple workplace changes," (2) "simple workplace judgment," (3) "simple work-related decisions," (4) "occasional interaction with the public, co-workers, and supervisors," and (5) no "rapid production quotas." (R. 27). These restrictions, however, do not necessarily address and/or fully account for Claimant's limitations in concentration, persistence, or pace.

As the Seventh Circuit explained in *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), a claimant's limitations in concentration, persistence, or pace were not addressed by an RFC with limitations to only simple work-related decisions and few workplace changes, which (as the Seventh Circuit noted) addressed a claimant's ability to adapt to the workplace. 794 F.3d at 815. Specifically, the Seventh Circuit held that a limitation to simple workplace judgment is essentially the same as a limitation to simple work-related decisions, and the court also concluded that a limitation to only occasional interaction with the public, coworkers, or supervisors addressed social functioning but did not address limitations in concentration, persistence, or pace. *Id.*

10

The only element of Claimant's RFC in this case that addressed concentration, persistence, or pace is the requirement that the work "not require rapid production quotas." (R. 27). In *Varga*, however, the Seventh Circuit found a similar limitation to no "fast-paced production" deficient because there was no definition of "fast-paced production" which allowed the VE to assess whether a person with that limitation could maintain the pace proposed. *Id.* In this case, the ALJ likewise failed to provide any definition of no "rapid production quotas" which would have allowed the VE to assess whether an individual with Claimant's limitations had the ability to maintain the pace in the jobs the VE identified. Consistent with the Seventh Circuit's analysis in *Varga*, it is not clear to this Court how limiting the proposed work to "simple workplace changes," "simple workplace judgment," and "simple work-related decisions" necessarily accommodated Claimant's moderate limitations in concentration, persistence, and pace. 794 F.3d at 814-15.[5] The ALJ's restrictions to "simple workplace changes," "simple workplace judgment," and "simple work-related decisions" deal with a claimant's ability to adapt to the workplace, not specifically a claimant's limitations in concentration, persistence, and pace. *Id.* at 815 ("'Few if any work place changes' with limited 'interaction with coworkers or supervisors' deals largely with workplace adaptation, rather than concentration, pace, or persistence.").[6] Nor does eliminating "rapid production quotas" account for a claimant's limitations in pace, especially when the ALJ has left that term

---

[5] *See also DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019); *Radosevich v. Berryhill*, 759 F. App'x 492, 495 (7th Cir. 2019); *Paul v. Berryhill*, 760 F. App'x. 460, 465 (7th Cir. 2019); *Yurt*, 758 F.3d at 858-59; *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009) (emphasizing that the "Commissioner continues to defend the ALJ's attempt to account for mental impairments," i.e. limitations in concentration, persistence, or pace, "by restricting the hypothetical to 'simple" tasks,' and we and our sister courts continue to reject the Commissioner's position"); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004).

[6] *See also Mischler v. Berryhill,* 766 F. App'x 369, 376 (7th Cir. 2019); *Moreno v. Berryhill,* 882 F.3d 722, 730 (7th Cir. 2018).

undefined.[7] Without any clear definition, eliminating work that requires "rapid production quotas" leaves both the VE and this Court to guess whether Claimant could perform at the pace required of a hand packer, sorter, or laboratory equipment cleaner.

The ALJ's own explanation for Claimant's RFC also suggests that the RFC was not intended to address Claimant's limitations in concentration, persistence, or pace. In his opinion, the ALJ explained that the RFC limitations to no more than simple workplace changes, simple workplace judgment, and simple work-related decisions and the limitation to no rapid production quotas were intended to address Claimant's difficulties with stress and changes in her routine and did not mention her limitations with concentration, persistence, or pace. (R. 30) ("[T]here appears to be a relation between increased stress and worsening of the claimant's symptoms. Therefore, it was reasonable to limit the claimant to work that required no more than simple, workplace changes, required no more than simple workplace judgment, and required no more than simple work-related decisions.").

Because the hypotheticals posed to the VE did not include any accommodations for Claimant's moderate limitations in concentration, persistence, or pace, and the ALJ's RFC determination similarly did not make any accommodation for those limitations, the RFC is deficient and does not account for all of Claimant's documented functional limitations. If Claimant's moderate deficiencies in concentration and pace had been included in the hypotheticals posed to the VE, the Court does not know whether the VE would have modified or changed her

---

[7] *See Varga,* 794 F.3d at 815 (finding the ALJ's hypothetical deficient and noting the ALJ's failure to define "fast-paced production" was "problematic" and rendered it "impossible" for the VE to accurately assess limitations in pace); *Mischler*, 766 F. App'x at 376 (holding that failure to define "piecework" or "fast-moving assembly line work" "makes it impossible for a VE to assess whether a person with those limitations 'could maintain the pace proposed.'"; *DeCamp*, 916 F.3d at 675-76 (rejecting restrictions of "unskilled work" with no "fast-paced production line or tandem tasks" "because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace").

assessment as to whether there are jobs in the local or national economy that Claimant could perform, and the Court cannot speculate about that.

Without more explanation from the ALJ and a fulsome assessment from the VE (with all of Claimant's limitations included in the hypotheticals considered by the VE), the Court cannot reconcile the ALJ's finding that Claimant has moderate limitations in concentration, persistence, or pace with the accommodations detailed in the RFC. Accordingly, remand is required for this reason as well.

### III. The ALJ Did Not Provide Sufficient Reasons For Discounting Claimant's Treating Psychiatrist

Claimant next argues that the ALJ mischaracterized Claimant's treating psychiatrist Dr. Jacob Moskovic's opinion and failed to provide sufficient reasons for rejecting it. The Court agrees with Claimant in part.

An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. *See* 20 C.F.R. § 416.927(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ "must offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, he still has to decide what weight to give that opinion. *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the

treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2)-(6); *see also Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

Dr. Moskovic completed a medical source statement dated August 3, 2017 in which he opined that Claimant was limited by her mental impairments. (R. 479-84). Specifically, he opined that Claimant is "totally dysfunctional" with a "continuously impaired functional capacity." (R. 484). He also observed that Claimant is "socially withdrawn and completely dependent on family members." (R. 484). Dr. Moskovic further opined that Claimant suffered from "severe, long lasting psychotic episode or status with very poor prognosis." (R. 484). The ALJ stated that he gave Dr. Moskovic's opinion "some weight" (R. 30), but the ALJ did not fully explain what portions of Dr. Moskovic's opinion he credited and what portions he rejected. In addition, the Court agrees with Claimant's contention that the ALJ mischaracterized portions of Dr. Moskovic's opinion and then relied on those mischaracterizations to support his decision to discount it. This means that the ALJ's decision to discount Dr. Moskovic's opinion was not supported by substantial evidence.

More specifically, without citation to the record, the ALJ stated that Dr. Moskovic opined that "the severity of psychosis symptoms" that Claimant "has experienced since 2012 kept her housebound and caused marked functional limitations." (R. 30). Claimant, however, asserts that Dr. Moskovic never opined Claimant was housebound. In his August 3, 2017 opinion and functional assessment (R. 478-84), Dr. Moskovic noted that Claimant would decompensate if she

14

was subjected to even a minimal increase in mental demands or change in the environment. (R. 481). He also opined that for one or more years she has been unable to function outside a highly supportive living arrangement. (*Id.*). The Court agrees with Claimant that these observations do not necessarily translate to a conclusion that Claimant is "housebound" as the ALJ characterized it in his opinion. (R. 30). Indeed, Dr. Moskovic's treatment notes document that Claimant has not been housebound. He noted that she has gone out with her family, goes to church, and planned to travel out of state. (R. 464, 465).

Moreover, at no point did Dr. Moskovic indicate that the marked functional limitations he described extend back to 2012 as the ALJ also suggested in his opinion. (*Id.*) Dr. Moskovic was asked to identify when Claimant first complained of symptoms consistent with a psychotic disorder, and he identified February 13, 2012. (R. 480). But there is nothing in his opinion that relates Claimant's functional limitations back to that date. Rather, the form asked Dr. Moskovic to identify whether Claimant had "current" marked limitations. (R. 481).

The Court agrees with Claimant that the ALJ mischaracterized Dr. Moskovic's opinion and presented it as more limited than it was, and the Commissioner's arguments to the contrary are not persuasive. *See Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016) (recognizing that an ALJ's mischaracterization of a physician's opinion caused the ALJ to believe the opinion exaggerated the claimant's limitations); *Krusec v. Colvin*, 2016 WL 3703088, at *1 (W.D. Wis. July 8, 2016) (finding that remand was required when the ALJ misunderstood opinion); *Tennison v. Colvin*, 2014 WL 2976866, at *7 (S.D. Ill. July 2, 2014) (holding that remand was required for misinterpretation of opinion); *Borland v. Astrue*, 2010 WL 5209380, at *8 (E.D. Wis. Dec. 16, 2010) (same); *Hill v. Astrue*, 2008 WL 1818450, at *8 (N.D. Ind. Apr. 22, 2008) (concluding that an RFC is not supported by substantial evidence when the ALJ misinterpreted a treating

physician's opinion). The ALJ created a conflict between Dr. Moskovic's opinion (as interpreted by the ALJ) and Claimant's own Function Report that did not exist, and then relied on that purported conflict as a reason not to give more weight to Dr. Moskovic's opinion. (R.30). This is an error requiring remand.

Claimant also challenges the ALJ's assessment of Dr. Moskovic's opinion because the ALJ did not explain what weight, if any weight, he gave to other factors relevant to an evaluation of a treating physician's opinion including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2)-(6).

In this case, there is a long and consistent treatment relationship between Claimant and Dr. Moskovic. As a psychiatrist, Dr. Moskovic is a specialist in the area and treated Claimant's mental conditions for a long period of time. As noted above (*see supra* n. 4), the longitudinal record of Dr. Moskovic's treatment notes and medication records reflect Claimant's consistent struggle with mental impairments and functional limitations. Yet, the ALJ does not address any of these factors which potentially could weigh in favor of giving Dr. Moskovic's opinions greater weight. Because the ALJ does not address these factors, the Court does not know how or if the ALJ considered them and will not speculate about it. Accordingly, remand is required for the reasons discussed in this section of the Court's Memorandum Opinion and Order as well.

**IV.     Remaining Claims**

Because the Court is remanding this case on the errors discussed above, it need not address the other arguments posited by Claimant on appeal since any additional analysis would not change

16

the result in this case. The Commissioner, however, should not assume that the Court agrees with the ALJ's analysis of those issues. Similarly, Claimant also should not make assumptions either. Rather, it simply is unnecessary for the Court to lengthen this Memorandum Opinion and Order by addressing Claimant's other arguments in a case that is being remanded anyway. This is particularly true when the Court's remand will affect the ALJ's RFC assessment and, as a result, the other issues Claimant has raised.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner (and the ALJ) to do what is necessary to build a logical bridge between the evidence in the record and the ultimate conclusions, whatever those conclusions may be. *See, e.g.*, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Brief in Support of Reversing the Decision of the Commissioner of Social Security [ECF No. 24] is granted in part. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 8, 2021